IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JOHN H. SELBY, JR., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:12-0560 |
| THE NORTHWESTERN MUTUAL | ) | CLASS ACTION |
| LIFE INSURANCE COMPANY, | ) | Chief Judge Todd J. Campbell |
| Defendant. | ) | Magistrate Judge E. Clifton Knowles |

_____

### *PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S*

### *MOTION FOR SUMMARY JUDGMENT*

_____

Plaintiff, John H. Selby, Jr., by and through counsel, files this Memorandum in support of Plaintiff's Motion for Summary Judgment filed herewith.[1]

### *SUMMARY OF CASE*

The Plaintiff, John H. Selby, Jr., filed this action, individually, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class.[2] Plaintiff alleges that Defendant,

_____

[1] In support of Plaintiff's Motion for Summary Judgment, Plaintiff relies on stipulations reached between Plaintiff and Defendant which are filed herewith. In this Memorandum, those stipulations will be referred to, individually, as "Stipulation" and by the number of the Stipulation. Defendant has produced a number of documents during discovery which have all been designated "NM-SELBY-PROD" followed by a number for each page produced. Defendant has stipulated that each of those documents, or portions thereof, which were written, published or generated by Defendant, are authentic and not excluded by the rule against hearsay. (Stipulation 27) Plaintiff has highlighted relevant portions of certain "NM-SELBY-PROD" documents for the convenience of the Court. All yellow highlighting appearing on "NM-SELBY-PROD" documents was done by Plaintiff.

[2] The putative class is specifically defined in Plaintiff's Complaint. (Complaint, ¶15)

Northwestern Mutual Life Insurance Company, is liable to him for common law breach of contract for failing to pay him benefits for total disability pursuant to a "Lifetime Benefit Rider," which was attached to and supplemented a policy of disability income insurance which Plaintiff purchased to protect himself in the occupation of a thoracic/cardiovascular surgeon. In addition to seeking a monetary judgment for breach of contract, the Plaintiff, on behalf of himself and of the proposed class, seeks a declaratory judgment prohibiting Defendant from refusing to pay future benefits to Plaintiff and class members based on the interpretation of the language of the Rider which Defendant has adopted and upon which it based its denial of benefits to Plaintiff. The question before this Court which is determinative of Plaintiff's individual claims is whether Defendant breached the terms of the Lifetime Benefit Rider when it refused to pay benefits to Plaintiff pursuant to that Rider.

*PROCEDURAL POSTURE OF CASE*

The parties submitted a Proposed Case Management Order, the terms of which were entered as the Initial Case Management Order in this action, in which the parties agreed that the Plaintiff's claims are premised upon the appropriate interpretation of contract language.[3] In that Order, the parties agreed to conduct discovery in order "to posture the matter for summary judgment and adjudication of the contract interpretation issues" respecting the Plaintiff's individual claims.[4] Under that Order, further discovery and the scheduling of issues related to class certification will not take place until the Court has ruled on the summary judgment motions as to Plaintiff's individual claims.[5]

---

[3] Dckt. #22 at p.3; Dckt. #25 at p.3.
[4] Dckt. #25 at p.3.
[5] *Id.*

2

*FACTS*

### I.   THE DISABILITY POLICY.

In 1982, Plaintiff purchased a disability insurance policy (the "Policy") from Defendant.[6]

The "policy date" of the Policy is October 1, 1982.[7]  In the application for the Policy, Plaintiff

identified his occupation as that of a thoracic/cardiovascular surgeon.[8]

### A.   The Policy Provided Own Occupation Coverage to Age 65.

The Policy terms provided coverage to Plaintiff in his occupation—own occupation

coverage[9]—to the first anniversary of the Policy following Plaintiff's 65th birthday. [10]  To prove

---

[6] Aff. J. Selby, ¶2.  Ex. A, Aff. J. Selby.  It is undisputed that Plaintiff is the owner and insured under the Policy. (Complaint ¶6, Answer ¶6)  The number of the Policy is D 273 023. (Ex. A to Aff. J. Selby at p. 3)

[7] Ex. A, Aff. J. Selby at p.3.

[8] Ex. C, Aff. J. Selby.

[9] Policy, Ex. A, Aff. of J. Selby.  The Policy terms establish that it is an "own occupation" policy as it provides coverage in the event Plaintiff is unable to perform the principal duties of "his occupation," (Policy, Ex. A to Aff. J. Selby at §1.2) and states that: "The words 'his occupation' mean the occupation of the Insured at the time he becomes disabled." (Policy, Ex. A to Aff. of J. Selby at §1.1)  Defendant's internal documents also describe the Policy as providing "own occupation" coverage.  The Policy is an LLD1 series policy.  (Stipulation 22)  In a document titled "Information Release to Agents," which is dated January of 1981, Defendant described a "feature" of LL series policies as providing coverage "in terms of the Insured's own occupation." (NM-SELBY-PROD 001509-1513 at 1510)  In a document prepared to explain features of the LLD1 policy, Defendant touted to potential purchasers of that policy that they would be "protected in your occupation" and "covered in your occupation."  (NM-SELBY-PROD 001534-1547 at 1543)

[10] Policy, Ex. A to Aff. J. Selby at §1.1, 1.2.  The "Initial Period" of the Policy coincides with the first anniversary of the Policy following Plaintiff's 65th birthday.  The "Initial Period" of the Policy was to October 1, 2008 (Policy, Ex. A to Aff. J. Selby at p.3), which was also the first anniversary of the Policy following Plaintiff's 65th birthday on August 17, 2008. (Policy, Ex. A to Aff. J. Selby at 3)  Plaintiff's birthday is set forth in his affidavit. (Aff. J. Selby, ¶5)  The Policy provides that: "During the Initial Period, the Insured is totally disabled when he is unable to perform the principal duties of his occupation." (Policy, Ex. A to Aff. J. Selby at §1.2) (Since the Policy provided that not less than twenty-four months of benefits would be paid, unconditional

3

"total disability," in order to receive benefits for total disability through the first anniversary of the Policy following Plaintiff's 65th birthday, Plaintiff only had to prove one condition: That he was "unable to perform the principal duties of his occupation."[11]

### B. The Policy Provided Optional Coverage Beyond Age 65 Even Without a Rider.

The Policy provided optional coverage beyond Plaintiff's 65th birthday and through the first policy anniversary following Plaintiff's 75th birthday.[12] Between the first policy anniversary following Plaintiff's 65th birthday and the first policy anniversary following Plaintiff's 75th birthday, under the terms of the Policy, to prove total disability, Plaintiff not only had to be unable to perform the principal duties of his occupation, but also, he could not be "gainfully employed in any occupation."[13] Thus, the Policy alone, without a rider, only provided unconditional own occupation coverage to Plaintiff through the first anniversary of the Policy following Plaintiff's 65th birthday, even though it provided optional coverage for ten years beyond that date.[14] Without a rider, Plaintiff would not have been able to receive unconditional own occupation coverage beyond age 65 under the policy form of the Policy.[15]

---

own occupation coverage under the Policy could have extended twenty-four months past the first anniversary of the Policy following Plaintiff's 65th birthday, but only in a circumstance where disability began sometime in the period 90 days and two months before the first anniversary of the Policy following the Plaintiff's 65th birthday. *Id* at 3).

[11] Policy, Ex. A to Aff. J. Selby at §1.2.

[12] Policy, Ex. A to Aff. J. Selby at §1.1, §1.2, and p. 3.

[13] Policy, Ex. A to Aff. J. Selby, at §1.2. That section sets forth the additional requirement that Plaintiff not be gainfully employed in any occupation, after the Initial Period, which began after the first anniversary of the Policy following Plaintiff's 65th birthday. (Policy, Ex. A to Aff. J. Selby at p. 3).

[14] *Infra* at fn 12.

[15] *Id.*

4

## II.     THE LIFETIME BENEFIT RIDER.

At the recommendation of the agent of Defendant who sold Plaintiff the Policy, Plaintiff also purchased a "Lifetime Benefit Rider" (the "Rider" or "Lifetime Benefit Rider") to supplement the Policy.[16]  Since the Lifetime Benefit Rider was first offered for sale by Defendant, and before this action was filed, Defendant referred to it as the "Lifetime Benefit Rider," although it has eschewed referring to it by that name, or even as a "rider," in this action.[17]  The Lifetime Benefit Rider provides, subject to its terms which are discussed more fully below, for the continuation of disability benefit payments for own occupation disability for the lifetime of the Plaintiff for the period which begins *after* the expiration of unconditional own occupation coverage under the Policy.[18]  The full monthly benefit payable under the Policy and under the Lifetime Benefit Rider is the same--- $2,000.00.[19]

---

[16] Aff. J. Selby, ¶2; Ex. B to Aff. J. Selby.

[17] NM-SELBY-PROD 000938; NM-SELBY-PROD 000940-41; NM-SELBY-PROD 000960-61; NM-SELBY-PROD 000968.  In addition to referring to the Rider as the "Lifetime Benefit Rider" in correspondence to Plaintiff, Defendant referred to it as a "lifetime benefit rider" in publications.  The Policy is an LLD1 series policy. (Stipulation 22)  In a 1980 publication titled "Field News," which was published by Defendant, it described the "lifetime benefit" as one of the new "riders" available with the LLD1 series policies.  (NM-SELBY-PROD 002097)  Again in a 1981 "Information Release to Agents," which was published by Defendant (Stipulation 7), it described "riders for use" with the LL series policies as a "Lifetime Benefit" rider. (NM-SELBY-PROD 001509-1513 at 1510)

[18] The coverage period under the Policy ended October 1, 2008 because the "maximum benefit period" under the Policy was to October 1, 2008, and the Policy only paid benefits through the "Maximum Benefit Period." (Policy, Ex. A to Aff. J. Selby at p. 3 and §1.1)  Coverage under the Rider could not begin until after the first policy anniversary of the Policy (October 1, 2008) because it did not pay benefits unless disability continued beyond the first anniversary of the Policy following Plaintiff's 65th birthday (which was October 1, 2008). (Rider, Ex. B to Aff. J. Selby, at second bullet point)

[19] Policy, Ex. A to Affidavit of J. Selby, "Schedule of Benefits and Premiums" at 3.

5

Defendant concedes that Plaintiff could have purchased the Policy without purchasing the Lifetime Benefit Rider.[20]  In fact, when the Lifetime Benefit Rider was introduced by Defendant, it was even available for purchase by owners of disability policies sold by Defendant which pre-existed the introduction of the Rider.[21]  Moreover, as Defendant's internal documents reveal, the Lifetime Benefit Rider was available for and "attachable to" disability policies with different policy forms than the Policy purchased by Plaintiff.[22]

For the Lifetime Benefit Rider, Plaintiff was required to pay a separate premium from the premium for the Policy.[23]  The Rider and the Rider premium are listed as a separate line item in the "Schedule of Benefits and Premiums" issued in conjunction with the Policy and Rider.[24]  The premium for the Policy and the Rider were payable for different terms.[25]

When Plaintiff received the Policy and the Rider, they were stapled together along with an amendment to the Policy, the application for the Policy, and an amendment to the application.[26]  The page of paper which contains the terms of the Lifetime Benefit Rider is not numbered, as are the pages of the Policy, and it was inserted and stapled after page 8 of the Policy.[27]  Additionally, the Defendant separately signed the Rider and the Policy.[28]

---

[20] Stipulation 11.

[21] Stipulation 24.

[22] In an "Information Release to Agents" published by Defendant in January of 1981, it stated that the Lifetime Benefit Rider was "[a]ttachable to policy forms LLD1, LLD2 and LLD5." (NM-SELBY-PROD 001509-1513 at 1510)  The Policy is an LLD1 series policy. (Stipulation 22)

[23] "Schedule of Benefits and Premiums," Ex. A to Aff. of J. Selby at 3; Stipulation 10.

[24] Ex. A, Aff. J. Selby at 3.

[25] *Id.*

[26] Aff. of J. Selby, ¶3.

[27] Aff. of J. Selby, ¶3; Exs. A and B to Aff. of J. Selby.  Defendant's own records acknowledge the Rider as "additional pages." (NM-SELBY-PROD 000460)

[28] Rider, Ex. B to Aff. J. Selby; Policy, Ex. A to Aff. J. Selby.

6

The Policy and Rider were issued to Plaintiff in Colorado, where Plaintiff resided and practiced medicine as a thoracic/cardiovascular surgeon.[29] Defendant drafted both the Policy and the Rider.[30]

The Lifetime Benefit Rider states as follows:

**LIFETIME BENEFIT**

**1.  THE BENEFIT**

The Full Benefit is payable for total disability as long as total disability continues during the lifetime of the Insured:

- if the Insured is totally disabled on the policy anniversary that is nearest his 60th birthday; and
- ***if that total disability*** of the Insured continues beyond the first policy anniversary that follows his 65th birthday.

  The premium for this Benefit is shown on page 3.

**2.  TERMINATION**

This Benefit will terminate:

- on the termination of this policy;
- on the policy anniversary nearest the Insured's 60th birthday unless the Insured is then totally disabled; or
- on receipt at the Home Office of the Owner's written request within 31 days of a premium due date.

(Rider, Ex. B, Aff. J. Selby) (emphasis added).

As set forth above, under the terms of the Rider, an insured, like Plaintiff, who was "totally disabled" on the policy anniversary nearest the insured's 60th birthday, was entitled to coverage under the Rider if "that total disability," referring to total disability as of the policy anniversary nearest the insured's 60th birthday, continued beyond the first policy anniversary

---

[29] Aff. J. Selby, ¶4; Ex. C to Aff. J. Selby.
[30] Stipulation 1.

following the insured's 65th birthday.  It is undisputed that Defendant determined that Plaintiff

was totally disabled as of the policy anniversary nearest his 60th birthday.[31]

### III.    PLAINTIFF'S TOTAL DISABILITY AND PAYMENT FOR TOTAL DISABILITY BY DEFENDANT.

In May of 1998, Plaintiff submitted a claim for disability benefits under the Policy.[32]

Thereafter, in December of 1998, Defendant determined that Plaintiff was totally disabled, and

that the "Beginning Date" of Plaintiff's total disability was July 19, 1998.[33]  The Policy provides

that: "The words 'his occupation' mean the occupation of the Insured at the time he becomes

disabled."[34]  The occupation of Plaintiff at the time of the onset of his disability was that of a

thoracic/ cardiovascular surgeon, and was determined to be the same by Defendant.[35]  As of

the "Beginning Date" of his total disability, July 19, 1998, Plaintiff was 54 years of age.[36]

By letter dated December 16, 1998, Defendant informed Plaintiff he would continue to

receive benefits each month pursuant to the terms of the Policy "as long as we [Defendant]

receive satisfactory proof of a continuing disability."[37]  Plaintiff was paid monthly benefits of

$2,000.00 per month pursuant to the Policy, from July 19, 1998 through September of 2008--- a

---

[31] Complaint, ¶8; Answer, ¶8. Stipulation 12.

[32] Complaint, ¶7; Answer, ¶7.  (NML-SELBY-PROD 000439-443 at 443)

[33] By letter dated December 16, 1998 (NM-SELBY-PROD 000086-87), Defendant stated that the "Beginning Date" of Plaintiff's disability under the Policy was July 19, 1998 and that his claim for disability benefits had been approved.  Under the Policy, the "Beginning Date" is the date on which benefits begin to accrue and it does not begin until the 91st day of disability. (Policy, Ex. A to Aff. J. Selby at 3 and 5, §1.1)  Defendant has stipulated that Plaintiff qualified for full benefits for total disability based on a beginning date of disability of April 20, 1998. (Stipulation 2)

[34] Policy, Ex. A to Aff. J. Selby at §1.1.

[35] Stipulation 15.

[36] Aff. of J. Selby, ¶5.

[37] NM-SELBY-PROD 000086-87.

period of over ten years.[38]  Thus, all of the disability payments which Defendant made to

Plaintiff were made for disability during the coverage period of the Policy, and not during the

coverage period of the Lifetime Benefit Rider, which coverage period began October 2, 2008.[39]

Following the onset of the disability which rendered him unable to treat patients in the

capacity of a thoracic/cardiovascular surgeon, Plaintiff attended law school and obtained a law

degree after which he worked full time as an associate professor at the University of Texas

Medical School, and as an associate medical director at a hospital in Houston, Texas.[40]  In 2007,

Plaintiff accepted a full time position at Vanderbilt University Medical Center as a professor of

anesthesiology and clinical surgery.[41]  During his employment at Vanderbilt, Plaintiff treated

patients in a non-surgical clinical setting, and did not perform any thoracic/cardiovascular

surgery.[42]

**IV.**    ***DEFENDANT'S REFUSAL TO PAY TOTAL DISABILITY BENEFITS TO PLAINTIFF***
        ***AFTER  THE COVERAGE PERIOD OF THE POLICY EXPIRED AND THE COVERAGE***
        ***PERIOD OF THE RIDER BEGAN.***

On or about March 3, 2008, Defendant notified Plaintiff, by letter, that, in order to be

entitled to benefits after the first policy anniversary of the Policy following Plaintiff's 65th

birthday (October 1, 2008):

---

[38] Aff. J. Selby, ¶6; Policy, Ex. A, Aff. J. Selby at §1.1, §1.2, and p. 3.
[39] Benefits were not payable under the terms of the Rider unless Plaintiff was totally disabled after the first anniversary of the Policy following his 65th birthday, which anniversary was October 1, 2008. (Rider, Ex. B, Aff. J. Selby at second bullet point; Policy, Ex. A, Aff. J. Selby, §1.1, §1.2, and p. 3)  Therefore, coverage under the Rider could not begin until after October 1, 2008.
[40] Affidavit J. Selby, ¶7.
[41] *Id.*
[42] *Id.*

9

"[Y]ou [Plaintiff] must continue to be unable to perform the principal duties of your occupation <u>and</u> not be gainfully employed in any occupation. If you are gainfully employed as of October 1, 2008 (the policy anniversary following your 65th birthday) you will no longer be eligible for ongoing disability benefits."[43]

The aforementioned letter, which was sent after the Policy and Rider had been in place for over twenty-five years, was the first notification to Plaintiff that Defendant's position was that benefits were not payable under the Lifetime Benefit Rider after the first policy anniversary following Plaintiff's 65th birthday if Plaintiff was gainfully employed in any occupation as of that anniversary.[44]

As of October 2, 2008, the day after the first anniversary of the Policy following Plaintiff's 65th birthday, Plaintiff was still employed at Vanderbilt University Medical Center.[45] Defendant denied Plaintiff benefits under the Rider based on language not in the Rider, but in the Policy, which language is as follows: "After the Initial Period[46], the Insured is totally disabled when he is unable to perform the principal duties of his occupation and is not gainfully employed in any occupation."[47] The Initial Period of the Policy ended October 1, 2008, which is

_____

[43] NM-SELBY-PROD 001007. In Stipulation 6, Defendant stipulated that the letter was sent on or about March 3, 2008.
[44] Aff. J. Selby, ¶8.
[45] Aff. J. Selby, ¶9.
[46] The phrase "Initial Period" does not appear in the Rider.
[47] In NM-SELBY-PROD 000940-41, which is a letter from Defendant to Plaintiff dated October 19, 2009, it relied on the language of §1.2 of the Policy to deny benefits under the Rider. The section of §1.2 of the Policy relied upon by Defendant is quoted above. After sending the March 2008 letter referred to above to Plaintiff, and well before the first anniversary of the Policy following Plaintiff's 65th birthday, by letter dated May 2, 2008, Defendant informed Plaintiff: "Since your policy [the Policy] was issued with a Maximum Benefit Period to age 65, you will no longer be receiving benefits after October 1, 2008." (NM-SELBY-PROD 000999) Therefore, even before the first policy anniversary of the Policy following Plaintiff's 65th birthday, Defendant made the decision to deny benefits to Plaintiff in spite of the fact that

also the date of the first anniversary of the Policy following Plaintiff's 65th birthday.[48]

Defendant terminated the Policy on September 28, 2008, based on its determination that the

Policy term had expired.[49]

Since December 31, 2010, when Plaintiff resigned his position at Vanderbilt University

Medical Center at age 67, Plaintiff has not been gainfully employed in any occupation.[50]

Plaintiff's inability to perform the principal duties of a thoracic/cardiovascular surgeon has

continued, without any interruption, since Defendant first determined, in 1998, that Plaintiff

was totally disabled as to that occupation.[51]

### CHOICE OF LAW

This action is before this Court based on diversity jurisdiction.  "A federal court sitting in

its diversity jurisdiction applies the choice of law rules of the forum state."  *Miller v. State Farm*

*Mut. Auto Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996).

Under Tennessee law, in cases involving insurance contracts, the substantive law of the

state where the policy was issued and delivered should be applied.  *See*, *Ohio Cas. Ins. Co. v.*

*Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973); *Charles Hampton's A-1 Signs, Inc. v.*

*American States Ins. Co.*, 225 S.W.3d 482, 485, n.1 (Tenn. Ct. App. 2006).  *See, also, NGK Metals*

*Corp. v. Nat. Union Fire Ins. Co.*,1:04-CV-56, 2005 WL 1115925 at *4 (E.D. Tenn. Apr. 29, 2005)

---

Plaintiff had purchased the Lifetime Benefit Rider and in spite of the fact that Defendant could
not know, at the time of its May 2, 2008 letter, whether or not Plaintiff would be gainfully
employed in any occupation after the first policy anniversary of the Policy following Plaintiff's
65th birthday, because that anniversary was months in the future.
[48] See discussion *infra* at fn 10.
[49] NM-SELBY-PROD 000829.  Plaintiff has included the first page (NM-SELBY-PROD 000817) of
Defendant's "Case Details" about the Policy and the page (NM-SELBY-PROD 000829) which
indicates the Policy was terminated.
[50] Aff. J. Selby, ¶10.
[51] Aff. J. Selby, ¶11.

("Tennessee courts apply the substantive law of the state in which the insurance policy was issued and delivered. . . .").  Rules of contract interpretation are considered substantive law.  *See, Bourke v. Dun & Bradstreet Corp.*, 159 F.3d. 1032, 1036 (7th Cir. 1998).  *See also, Bates v. Hartford Ins. Co. of Midwest*, 787 F. Supp. 2d 657, 660 (E.D. Mich. 2011).  The Policy and Rider which are the subject of this action were issued and delivered in Colorado, so the substantive law of Colorado, including its law related to contract interpretation, applies to this action.

### SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475 (6th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2)).

### APPLICABLE COLORADO LAW

Under Colorado law, "[t]he construction of a contract is a question of law for the court." *Boulder Plaza Residential, LLC v. Summit Flooring, LLC*, 198 P.3d 1217, 1220 (Colo. App. 2008) (*citing B&B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998)).  Under Colorado law, insurance policies are construed according to principles of contract interpretation.  *Hoang v. Assurance Co. of America*, 149 P.3d 798, 801 (Colo. 2007) (*en banc) (citing Thompson v. Md. Cas. Co.*, 84 P.3d 496, 502 (Colo. 2004)).

To prove a breach of contract under Colorado law, a plaintiff must prove: (1) existence of the contract; (2) performance by the plaintiff or justification for non-performance; and (3)

failure of the defendant to perform the contract. *See, W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992); *Interbank Investments, LLC v. Eagle River Water and Sanitation Dist.*, 77 P.3d 814, 818 (Colo. App. 2003).

## ARGUMENT

### A. The Lifetime Benefit Rider Changed The Requirements For Receiving Benefits For "Total Disability" By Using The Phrase "That Total Disability."

A rider is "a written modification of the terms of an insurance policy." (1 *Couch on Insurance* §1.3 (3rd ed. 2011)). Defendant's interpretation of the Rider wholly ignores the fundamental purpose of the Rider, which was to modify and to supplement the coverage of the Policy. Defendant's position as to why Plaintiff is not entitled to benefits under the Lifetime Benefit Rider is premised upon a selective, strained, and convoluted interpretation that attempts to confuse the coverage provided pursuant to the Policy with the coverage provided pursuant to the separately purchased, separately billed, and separately signed Rider, which Rider provides coverage during a separate period. As discussed more fully below, Defendant's reliance on the Policy's definition of "total disability" is misplaced because the Rider, which modified and supplemented the Policy, contains a different definition of "total disability."

### 1. "Total Disability" as Defined in the Lifetime Benefit Rider.

The Lifetime Benefit Rider changed the requirements that had to be met in order for Plaintiff to receive benefits for the period beginning October 2, 2008 (the period following the first anniversary of the Policy following Plaintiff's 65th birthday). If Defendant had not intended

13

to change the definition of "total disability" by the language which it used in the Rider, it would never have used the phrase "that total disability" in the second bullet point of the Rider.

The relevant parts of the Rider provide:

**LIFETIME BENEFIT**

**1. THE BENEFIT**

The Full Benefit is payable for total disability as long as total disability continues during the lifetime of the Insured:

- if the Insured is totally disabled on the policy anniversary that is nearest his 60th birthday; and

- if ***that total disability*** of the Insured continues beyond the first policy anniversary that follows his 65th birthday.

(Rider, Ex. B, Aff. J. Selby). (Emphasis added).

To be "totally disabled" under the first bullet point of the Rider, Plaintiff only had to be unable to perform the principal duties of his occupation as a thoracic/cardiovascular surgeon as of the Policy anniversary nearest his 60th birthday (October 1, 2003), which he was and which Defendant does not dispute.[52] There is no language in the Policy or in the Rider which required Plaintiff to prove anything more than that he was unable to perform the principal duties of his occupation to receive benefits for total disability as of the anniversary of the Policy nearest Plaintiff's 60th birthday.

---

[52] Aff. J. Selby, ¶11. Stipulation 12. That stipulation provides that Plaintiff was entitled to benefits for total disability as of the anniversary of the Policy nearest Plaintiff's 60th birthday. In order to be entitled to benefits for total disability, obviously, Defendant would have had to have considered Plaintiff to be totally disabled.

The unequivocal meaning of the second bullet point of the Rider is that, if Plaintiff's total disability under the immediately preceding first bullet point continued beyond October 1, 2008, then Plaintiff would be entitled to benefits under the Rider. Defendant has attempted to escape the consequences of its deliberate use of the words "that total disability" in the second bullet point of the Rider by relying on the different definition of "total disability" in the Policy. Defendant uses a contrived, "select the good, but ignore the bad" interpretation instead of a straightforward interpretation of the plain meaning of the words it chose to use in the Rider. It is probative of how Defendant itself interpreted the phrase "that total disability" that Defendant changed the language of that bullet point in the lifetime benefit provisions of disability policies issued after Plaintiff's Rider to read "***the*** total disability continues. . . ." instead of "***that*** total disability continues. . . ."[53]

Defendant's own internal documents belie any claim on its behalf that the first two bullet points of the Rider do not mean that Plaintiff was entitled to receive benefits under the Rider so long as he was totally disabled on the policy anniversary of the Policy following his 60th birthday. In an explanation made available to Defendant's agents, which was published in January of 1981, Defendant informed its agents that the Lifetime Benefit Rider "[e]xtends the Maximum Benefit Period to Lifetime for total disabilities which commence before age 60 and continue beyond age 65."[54]

### 2.    *"Total Disability" As Defined in the Policy.*

---

[53] Second bullet point of Ex. 25 to Stipulations at ¶1.7; Stipulation 25 and Stipulation 26 and second and third bullet points of Ex. 26 to Stipulations at ¶2.7 (emphasis added). It is apparent from the language of the "lifetime benefit" provisions of the disability policies offered for purchase after Plaintiff purchased the Rider, that the provisions of the Rider were incorporated into disability policies. (*Id*).

[54] NM-SELBY-PROD 001509-1513 at 1510. Stipulation 7.

Had Plaintiff not purchased the Rider, but elected to extend his coverage under the Policy beyond the "Initial Period,"[55] he would not have been entitled to benefits for total disability beyond the "Initial Period" unless he was not gainfully employed in any occupation in addition to being unable to perform the principal duties of his occupation.[56] Because Plaintiff purchased the Rider, however, Defendant's position that the definition of "total disability" which is in the Policy applies is wrong. The Policy provision which defines "total disability" after the "Initial Period" was intended to apply if Plaintiff elected to continue coverage under the Policy. It was not intended to apply to Plaintiff's situation where unconditional own occupation coverage had been extended pursuant to the separately purchased Lifetime Benefit Rider.

**B.** **If the Court Adopts Defendant's Flawed Interpretation, the Second Bullet Point in the Rider Would Be Rendered Totally Meaningless Which Would Be Contrary To Well-Established Contract Law.**

In construing a contract, "a court should seek to 'give effect to all provisions so that none will be rendered meaningless.'" *Pub. Serv. Co. of Colo. v. Wallis & Cos.*, 986 P.2d 924, 933 (Colo. 1999) (*en banc*) (*quoting Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984)). *See also*, *Roberts v. Adams*, 47 P.3d 690, 694 (Colo. App. 2001) ("[t]o determine the meaning of a contract, courts . . . should seek to give effect to all provisions so that none will be rendered meaningless"). The language in the second bullet point is completely and totally unnecessary if, as Defendant contends, it was its intent that Plaintiff would not be entitled to benefits under the Rider unless, after October 1, 2008, he was both unable to perform the principal duties of his occupation as a thoracic/cardiovascular surgeon, and was

---

[55] The "Initial Period" was to October 1, 2008. (Policy, Ex. A to Aff. J. Selby at p.3)
[56] See explanation and citations *infra* at p. 4.

16

not gainfully employed in any occupation.  If that was truly Defendant's intent, it could have, and would have, omitted entirely the language in the second bullet point.

If the Court adopts Defendant's proffered interpretation of the Rider, the second bullet point in the Rider will be rendered completely and totally meaningless.  An interpretation that renders the second bullet meaningless would contravene the bedrock principal of contract interpretation discussed above.  Even more importantly, it would contravene the intent of the parties as expressed in the Rider and the expectation created by the second bullet point.

       ***C.***       ***There Is No Ambiguity In The Rider.***

Depending upon whether benefits are due under the terms of the Policy, on one hand, or under the terms of the Rider, on the other hand, the definition of "total disability" has a different meaning.  The fact that the term "total disability" is used in the Policy and in the Rider does not, *ipso facto*, make those words, as used in the Rider, ambiguous.  Moreover, the definitions of "total disability" in the Policy and in the Rider are not interchangeable for the purpose of establishing entitlement to benefits.  Plaintiff could not seek benefits under both the Policy and the Rider for the same time period.  The Policy provides for benefits for the period through October 1, 2008:  The Rider provides for benefits for the period beginning October 2, 2008.  If someone seeks benefits under the Policy, one definition of "total disability" applies.  If he or she seeks benefits under the Rider, a different definition of "total disability" applies, which definition is dependent on the phrase "that total disability" used in the Rider in direct reference to the definition of a total disability arising on or before the policy anniversary nearest the insured's 60th birthday.

**D.** **The Meaning Of "Total Disability" Under The Terms Of The Rider Prevails Over Any Inconsistent Meaning Of That Phrase In The Policy.**

Assuming for the sake of argument that there was some conflict between the language of the Policy and the language of the Rider, which there is not when they are considered in the proper context, the provisions of the Rider would prevail over the provisions of the Policy. The terms "rider" and "endorsement" have the same meaning. [57] The general rule provides that "when a conflict in an insurance contract arises between provisions contained in the body of the policy and provisions contained in an endorsement to that policy, the endorsement provisions prevail." *Simon v. Shelter Gen. Ins. Co.,* 842 P.2d 236, 241 (Colo. 1992) (*en banc*) (citing 13A John A. Appleman and Jean Appleman, *Insurance Law and Practice*, §7537 at 146 (1976)). *See also, Brannan v. Republic Ins. Co*., 495 P.2d 1144, 1146 (Colo. App. 1972) ("[t]he provisions of a rider control if in conflict with the provisions of the policy to which it is attached").

The above rule recognizes the fact that riders are "often issued to modify or remove the effect of existing terms or exclusions contained in the policy form," and, therefore, should "supersede" the terms of the policy form. 3 J. Thomas and F. Mootz, *New Appleman on Insurance Law*, §21.02(2)(a) (Law Library Ed. 2012). The fact that riders alter the terms of the policy form has been recognized as requiring a priority of interpretation described as follows:

> The fact that the modification is the last word of the parties on the subject tends to give added significance or importance to the modified clause. Thus, the point has

---

[57] 1 *Couch on Insurance* §1.3 (3rd ed. 2011) ("the term rider is a functional equivalent" of the term "endorsement"); *Black's Law Dictionary* (9th ed. 2009) ("endorsement" is "an amendment to an insurance policy, a rider"); 44 *C.J.S. Insurance* §491 (2012) ("slips or riders" are referred to as endorsements).

been made that although a rider is to be construed as part of a policy, the fact that it is attached to a printed form of general use, and is intended to apply more specifically to the condition of the parties named in the policy, **gives the rider a predominating influence in determining the meaning and intent of the policy**.

*2 Couch on Insurance*, §25:5 (3rd ed. 2011) (emphasis added).

As one treatise on insurance law recommends, "because the endorsements change the policy form, a policy should, in a sense, be read backwards, i.e., the endorsements should be read first." *3 New Appleman on Insurance Law*, §21.

The Lifetime Benefit Rider, by the use of the phrase "that total disability of the Insured continues," unequivocally promises lifetime benefits to an insured, such as Plaintiff, who is totally disabled on the policy anniversary that is nearest his 60th birthday if "*that* total disability" continues. Assuming that the separate definitions of total disability contained in the Policy and Rider were considered out of context, *i.e.,* not as separate definitions, then those definitions would conflict. If the requirements for receiving benefits for "total disability" under the Policy and under the Rider conflict, the requirements under the Rider should prevail.

If Defendant did not want to create the expectation on the part of insureds, like Plaintiff, who purchased a Lifetime Benefit Rider in order to continue unconditional own occupation coverage, that benefits were not payable if the insured was gainfully employed after the first policy anniversary following the insured's 65th birthday, why did it not state that in the Rider? That would have been simple to do in one sentence.[58] Of course, if Defendant had placed such language in the Lifetime Benefit Rider, it is reasonable to conclude that it might

---

[58] Had Defendant placed such language in the Rider and maintained the language of the first two bullet points in the Rider, the Rider, of course, would then have made no sense because it would have had two directly conflicting meanings.

19

well have sold less of the Riders because potential insureds would not have paid an extra

premium each month to receive a monthly benefit that paid substantially less than they were

earning only if they ceased employment at age 65.  This is especially so since the Policy itself

offered coverage until at least an insured's 75th birthday under the very same conditions which

Defendant contends apply to the Rider.  It is also significant that Defendant did not expressly

incorporate the terms of the Policy in the Rider, although even if it had incorporated the terms

of the Policy in the Rider, that alone would not have eliminated the different requirements for

receiving benefits under the Policy and the Rider.

> **E.**     **Assuming For The Sake Of Argument That The Words "Total Disability,"  As Used In The Policy, And The Words "Total Disability" As Used In The Rider, Had Two Irreconcilable Meanings, Or That Any Other Ambiguity In The Policy And/Or In The Rider Existed, Any Ambiguities In The Terms Of The Policy Or Rider Must Be Construed Against Defendant.**

In addition to the law discussed above, which gives the Rider priority over the Policy, if

there were ambiguity in the meaning of "total disability" under the Rider, which there is not, or

any other ambiguities in the Rider or Policy, any such ambiguities must be resolved in favor of

Plaintiff and against Defendant under well-established rules of interpretation which would

apply even if the language of the Rider had been incorporated directly into the Policy.

"Ambiguous terms in an insurance policy are construed against the insurer."  *Weitz Co., LLC v.*

*Mid-Century Ins. Co.*, 181 P.3d 309, 312 (Colo. App. 2007) (*citing Thompson v. Maryland Cas.*

*Co.*, 84 P.3d 496, 501-02 (Colo. 2004)).  *See also*, *Simon, supra* at 239-40 (conflicting terms in

insurance policy to be construed against insurer and in favor of coverage).

**F.**    *Assuming For The Sake Of Argument That This Court Determines That Plaintiff Was Not Entitled To Benefits Under The Rider Because He Was Gainfully Employed After October 1, 2008, Plaintiff Became Entitled To Benefits Under The Rider At The Point He Was No Longer Gainfully Employed In Any Occupation.*

Defendant contends that, because Plaintiff was gainfully employed in any occupation after October 1, 2008, Plaintiff is not entitled to benefits under the Rider despite the fact that his gainful employment ceased on December 31, 2010, and his inability to perform the principal duties of a thoracic/cardiovascular surgeon continued.[59] If this Court determines that Plaintiff was not entitled to benefits for any period after October 1, 2008, during which he was gainfully employed, Plaintiff, nevertheless, was entitled to benefits as soon as his gainful employment in any occupation ceased, which it did on December 31, 2010. At the time Plaintiff's gainful employment in any occupation ceased on December 31, 2010, he was, and remains, unable to perform the principal duties of his occupation as a thoracic/cardiovascular surgeon.

The language in Plaintiff's Rider, unlike language which was used in later disability policies offered by Defendant[60], does not require that Plaintiff's total disability continue "without interruption" beyond the first policy anniversary of the Policy following Plaintiff's 65th birthday. The word "continue" has, according to common usage and dictionaries, several

---

[59] Stipulation 4, 14.

[60] In the lifetime benefit provision of a disability policy form offered after Plaintiff purchased the Rider, Defendant used the following language: "[T]he total disability continues **without interruption** to the policy anniversary that follows the 65th birthday of the Insured." (Ex. 26 to Stipulation 26 at p.8, §2.7) (Emphasis added).

different meanings. Prominent meanings of "continue" include "to go on after suspension or interruption;"[61] "resume;"[62] and "to carry on after an interruption."[63]

If the Court determines that, as of October 2, 2008, Plaintiff's status of total disability ceased because he was gainfully employed in any occupation, nevertheless, once Plaintiff ceased his gainful employment, his status of total disability continued from that point forward. Thus, Plaintiff was entitled to be paid benefits for total disability for the period beginning January 1, 2011, even if this Court determines that Plaintiff was not totally disabled under the Rider because he was gainfully employed as of October 2, 2008.

## CONCLUSION

There are no material facts in dispute which preclude this Court's interpretation of the language of the Rider. Based on the undisputed material facts, the Plaintiff is entitled to a summary judgment for the reasons set forth above.

## RELIEF REQUESTED

Plaintiff requests a summary judgment that the Defendant is liable to Plaintiff for breach of contract for failing to pay benefits due to Plaintiff under the terms of the Rider. Plaintiff requests that the entry of a monetary judgment in favor of Plaintiff be made at the appropriate time after issues related to certification have been resolved.

---

[61] *Webster's Unabridged Dictionary*, 2nd, (2001 Deluxe Ed.).
[62] *Oxford English Dictionary* (6th ed. 2007).
[63] *American Heritage Dictionary of the English Language* (4th ed. 2000).

If this Court interprets the Lifetime Benefit Rider as requiring Defendant to pay benefits under the Rider so long as Plaintiff is unable to perform the principal duties of the occupation of a thoracic/cardiovascular surgeon, and without regard to whether Plaintiff is gainfully employed in any occupation, Plaintiff requests that, at the time this Court enters a monetary judgment, it enter a judgment declaring that Defendant is not entitled to deny future benefits to Plaintiff on the grounds that Plaintiff is gainfully employed in any occupation. If this Court interprets the Lifetime Benefit Rider as requiring Defendant to pay benefits to Plaintiff if Plaintiff is unable to perform the principal duties of the occupation of a thoracic/cardiovascular surgeon and is not gainfully employed in any occupation, Plaintiff requests that, at the time the Court enters a monetary judgment, it enter a judgment declaring that Defendant is not entitled to deny benefits to Plaintiff under the Rider solely on the grounds that, as of October 2, 2008, Plaintiff was gainfully employed in an occupation.

Respectfully Submitted,

s/ J. Ross Pepper_____
J. Ross Pepper, (TN. BPR #14444)
Matthew Brothers, (TN. BPR #016000)
Timothy Roberto, (TN. BPR #030321)
PEPPER & BROTHERS, PLLC
2323 21st Avenue South, Suite 502
Nashville, Tennessee 37212
(615) 256-4838
rpepper@pepperbrotherslaw.com
mbrothers@pepperbrotherslaw.com
troberto@pepperbrotherslaw.com

**ATTORNEYS FOR PLAINTIFF**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of December 2012, a true and correct copy of the foregoing was served electronically via the Electronic Case Filing System to the following:

Robert E. Boston, (TN BPR #009744)
Charles H. Williamson, (TN BPR #018287)
WALLER LANSDEN DORTCH & DAVIS, LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 244-6380
*bob.boston@wallerlaw.com*
*charley.williamson@wallerlaw.com*

Paul F. Heaton
Admitted *pro hac vice*
HEATON TRIAL LAW, S.C.
Of Counsel,
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
(414) 287-9601
*pheaton@gklaw.com*

Anthony S. Baish
Admitted *pro hac vice*
Daniel C.W. Narvey
Admitted *pro hac vice*
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI  53202-3590
(414) 273-3500
(414) 273-5198
*abaish@gklaw.com*
*dnarvey@gklaw.com*

/s/ J. Ross Pepper

J. Ross Pepper

24